UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           - against -<br><br>BRUCE MELVIN,<br><br>                           Defendant. | **ORDER**<br><br>23 Cr. 204 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

In this racketeering case, the Government moves for discovery sanctions against Defendant Bruce Melvin. (Dkt. No. 86) The Government alleges that Melvin violated this Court's protective order governing Rule 16 discovery (Dkt. No. 41) by "using a contraband cellphone to broadcast a post-arrest interview of co-defendant Jordan Bennett on Instagram that had been produced to Melvin [in discovery]." (Govt. Br. (Dkt. No. 86) at 1)[1] Melvin contends that the Government's evidence is insufficient to link him to the illicit broadcast. (Def. Opp. (Dkt. No. 92) at 2) On April 24, 2024, this Court conducted an evidentiary hearing concerning the Government's allegations. The parties later submitted post-hearing briefing. (Dkt. Nos. 139, 141)

The Court concludes that the Government has established by a preponderance of the evidence that Melvin made the illicit broadcast. Accordingly, the Government's application for discovery sanctions against Melvin will be granted.

---

[1] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

I. **THE INDICTMENT AND ARREST**

The Indictment alleges that between 2019 and 2023, Melvin and nine co-defendants were members of a violent street gang known as "Dub City," which operated in the Mt. Hope and Morris Heights sections of the Bronx. According to the Government, members of Dub City engaged in narcotics trafficking, bank fraud, robberies, assault, and murder. (Indictment (Dkt. No. 1) ¶ 1) The Indictment charges Melvin with (1) racketeering conspiracy (id. ¶ 6); (2) attempted murder and assault with a dangerous weapon in connection with shootings on May 9, 2021, June 2, 2021, and May 2, 2022 (id. ¶¶ 13, 20, 23); (3) discharging a firearm during these shootings (id. ¶¶ 14, 21, 24); (4) conspiring to distribute fentanyl, heroin, oxycodone, cocaine base, and marijuana (id. ¶¶ 34-36); and (5) possessing a firearm in connection with the narcotics conspiracy. (Id. ¶ 37)

Melvin was arrested on April 20, 2023. He has been detained pending trial and is held at the Metropolitan Detention Center (the "MDC"), along with his nine co-defendants. Trial is scheduled for October 7, 2024. (Dkt. No. 75)

II. **THE ILLICIT BROADCAST OF DEFENDANT
JORDAN BENNETT'S POST-ARREST INTERVIEW**

As part of Rule 16 discovery, the Government has produced "multiple terabytes of data" to Melvin and his co-defendants. (Sept. 7, 2023 Tr. (Dkt. No. 72) at 5-6) The Government produced this discovery to Melvin and his co-defendants pursuant to a May 8, 2023 protective order. (Dtk. No. 41) The protective order states that material produced in discovery (the "Disclosure Material") "shall not be disclosed by the defendants or defense counsel, including any successor counsel . . . other than as set forth herein, and shall be used by the defense solely for purposes of defending this action." The protective order further provides that

2

"[t]he defense shall not post any Disclosure Material on any Internet site or network site, including any social media site such as Facebook or Twitter, to which persons other than the parties hereto have access." (Id. ¶ 4)

As part of Rule 16 discovery, Melvin and his co-defendants received "an audio recording of an interview law enforcement conducted with co-defendant Jordan Bennett on or about December 28, 2022 after Bennett and others were arrested" by the New York City Police Department (the "Interview"). (Govt. Br. (Dkt. No. 86) at 2; see Govt. Corrected Br. (Dkt. No. 87) at 1)

The Government contends that

> [s]ometime before January 29, 2024, Melvin posted an excerpt of the Interview on Instagram. More specifically, Melvin broadcasted himself playing the Interview from inside of the MDC. Melvin's broadcast was viewed by over 1,300 other Instagram users, many of whom posted comments accusing Bennett of being a "rat" and a "snitch," among other things.

(Govt. Br. (Dkt. No. 86) at 2) (footnote omitted) According to the Government, the host user responsible for the Instagram broadcast (the "Broadcast") is "Code 33 TV," which is "an established channel in the Bronx that . . . exists for the purposes of spreading leaked information and rumors about who is and who is not cooperating in criminal cases." (Apr. 24, 2024 Tr. (Dkt. No. 144) at 9)

The Government contends that Melvin transmitted the Interview online by "call[ing] in" to the Code 33 TV broadcast on Instagram (id. at 9, 10) from inside the MDC, using a contraband cell phone.[2]

---

[2] On February 27, 2024, a contraband cell phone was found in Melvin's cell at the MDC. (Id. at 43) The seized phone has a photograph of Melvin on the lock screen, and contains messages between Melvin and his attorney. (Id.)

3

On January 29, 2024, someone with the username "GTA 5 ONLINE GANG WARS!! Greatest Quality Nation" – posted on YouTube a 27-minute excerpt from the Broadcast entitled "Billy Bands Biggest NYC Rat! Feds cooperating."[3] (Govt. Br. (Dkt. No. 86) at 3, Ex. A) On January 31, 2024, this user posted a 13-minute excerpt entitled "Billy Bands Snitched part 2!" (Govt. Br. (Dkt. No. 86) at 3; Ex. B) On February 20, 2024, this user posted a 4-minute excerpt entitled "Billy Bands Federal Informant pt 3! Home now in WITSEC." (Govt. Br. (Dkt. No. 86) at 3; Ex. C)

Each of the YouTube videos appears to have been recorded from a cell phone. That is, the videos are in the familiar "portrait mode" aspect ratio common to many cell phones; the device's battery level and internet connection signal are visible in the top right corner; and the individual who recorded the video periodically receives messages and other notifications on the device from other applications.

The three YouTube videos are each split into a top half and a bottom half. The top half of the video feed shows a graphic of the audio recording of the Interview as it is being played on another device – i.e., the camera of the device recording the video is pointed at another device playing the audio recording. The Government contends that Melvin recorded the graphic of the audio recording as it was being played and then broadcast the Interview from inside the MDC via the Code 33 TV Instagram channel. The top portion of the video includes text stating that the video is "LIVE" and that approximately 800 people are watching the broadcast. (Apr. 24, 2024 Tr. (Dkt. No. 144) at 21-22) The top portion of two of the YouTube videos also includes text stating, "Paid partnership with code33tv." (Govt. Br., Exs. B, C (Dkt. No. 86)) Melvin is not visible in the video feed, although the fingers of an individual controlling the

---

[3] "Billy Bands" is one of Jordan Bennett's nicknames.

4

device playing the Interview are occasionally visible. The individual transmitting the Interview comments on the Interview as he pauses, rewinds, and fast-forwards portions of the audio recording.

The bottom half of each YouTube video shows a chat feed in which other Instagram users comment on the video in the top half in real time. Many users post comments accusing Bennett of being a "rat," a "snitch," or "telling" on people. (Govt. Br., Ex. A (Dkt. No. 86) at 4:00, 6:53, 7:02, 7:50, 14:50, 15:15, 17:02, 19:05, 25:10, 26:08) Several users also post "Free DubCity." (Id. at 4:39, 4:55, 8:18)

Although Melvin is not visible in any of the You Tube videos, the Government contends that his "very distinctive voice" is audible as the voice commenting on the Interview during the Instagram broadcast. (Govt. Br. (Dkt. No. 86) at 4)

At time stamp 1:18 of the first YouTube video, the person commenting on the Interview says, "Yo, listen, listen, yo, listen, listen, listen, shit's crazy," as he rewinds and replays a portion of the Interview in the top half of the video feed. (Govt. Br., Ex. A (Dkt. No. 86), at 1:18-1:30) This same individual is heard on several other occasions during the three YouTube videos. See, e.g., id. at 8:05-8:10 ("They keep meeting? What?"); id. at 14:40-14:45 ("He's gonna call from his number this time.").

The Government contends that the person commenting on the Interview during the YouTube videos is Melvin, and that the voice heard on these videos is the same voice heard in several audio recordings of Melvin's voice found in Melvin's Instagram account. (Govt. Br. (Dkt. No. 86) at 4)[4] In these Instagram audio recordings, Melvin makes brief statements such as,

---

[4] The Government obtained a search warrant for the audio recordings from Melvin's Instagram account. (Id.) Melvin does not concede that his voice is heard on the excerpts from his

5

"alright listen bro, I'm gonna show you how easy it is" (Govt. Br., Ex. D (Dkt. No. 86)); "bro, what you mean, bro, I'm talking about with the cash app money" (Id., Ex. E (Dkt. No. 86)); and "you called me that out your own mouth, you forgot?" (Id., Ex. F (Dkt. No. 86))

## III.  THE EVIDENTIARY HEARING

At the April 24, 2024 evidentiary hearing, the Government offered testimony from Detective Joseph Boyer of the New York City Police Department. Det. Boyer works with the Bronx Violent Crime Squad, and he has been the lead detective investigating the Dub City gang since September 2021. (Apr. 24, 2024 Tr. (Dkt. No. 144) at 12-13)

Det. Boyer has watched YouTube videos of Melvin; conducted surveillance of him; listened to "hundreds" of audio recordings of Melvin's voice in the form of "voice notes" and "voice memos"; and listened to "more than 50" recorded jail calls that contain Melvin's voice. (Id. at 14-15, 26) He has also spoken with Melvin on two occasions. In the fall of 2022, Det. Boyer had a "street encounter" with Melvin; "over the course of a half hour" the police "stopped Mr. Melvin, seized some items from him, spoke[] to him, and he was released." (Id. at 15-16) Det. Boyer was "dialoguing" with Melvin during the encounter, but "not the entire 30 minutes." (Id.) On April 20, 2023 – the day of Melvin's arrest in the instant case – Det. Boyer "spent an extensive amount of time with Mr. Melvin through the whole arrest process, through pretrial and everything else." (Id. at 16) Their discussions were "casual conversations, nothing of substance for this case." (Id.)

Det. Boyer describes Melvin's voice as "very distinct," and he testified that he is sufficiently familiar with Melvin's voice to recognize it. (Id. 16-17) In preparation for his

---

Instagram account, but he has offered no plausible alternative explanation, citing only "the potential for account compromise or impersonation." (Def. Opp. (Dkt. No. 92) at 2)

6

testimony, Det. Boyer listened to the entirety of the three videos uploaded to YouTube. At the hearing and while on direct examination, Det. Boyer testified that he is "fairly certain" that the person heard commenting on the Interview during the Instagram broadcast is Bruce Melvin.[5] (Id. at 25-26)  Det. Boyer also testified, however, that he is "not a hundred percent certain" that Melvin's voice is heard on the Broadcast, and that Melvin's personal Instagram username does not appear in any of the videos.  (Id. at 37-38, 42)

## DISCUSSION

The Government contends that Melvin broadcast the audio recording of the Interview on Instagram, and thereby violated this Court's protective order.  (Govt. Br. (Dkt. No. 86) at 1)  Given Melvin's alleged violation of the protective order, the Government asks this Court to "revoke Melvin's individual access to discovery in the Metropolitan Detention Center, and require that Melvin view discovery only in the presence of counsel."  (Id.)

Melvin contends that the Government has not offered evidence sufficient to demonstrate that he broadcast the Interview on Instagram.  (Def. Post-Hrg Br. (Dkt. No. 141) at 1)

## I. LEGAL STANDARD

Rule 16(d)(1) of the Federal Rules of Criminal Procedure provides that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  It is thus "well within the discretion of the District Court under Rule 16(d)(1) of the Federal Rules of Criminal Procedure" to enter

---

[5] On redirect examination – after being cross-examined by defense counsel regarding his level of confidence that it was Melvin's voice – Det. Boyer testified that he is "very confident" that the person heard commenting on the Interview is Melvin. (Id. at 42)

protective orders regarding criminal discovery. United States v. Guzman Loera, 24 F.4th 144, 155 (2d Cir. 2022).

**II.     ANALYSIS**

There is no dispute here that (1) all ten defendants in this case, including Melvin, received a recording of the Interview via discovery; (2) the protective order in this case prohibits posting the Interview online; (3) someone posted an audio recording of the Interview online via Instagram; and (4) if Melvin posted the Interview online, this Court is authorized under Rule 16 to restrict his future access to discovery materials.

What is in dispute is whether the Government has demonstrated that it was Melvin who posted the audio recording of the Interview online in the Instagram broadcast that was later recorded and posted onto YouTube.

As an initial matter, dissemination of the Interview during discovery was quite limited. The ten defendants in this case – all of whom are detained at the MDC – were given access to the audio recording of the Interview as part of Rule 16 discovery. While the defendants' lawyers presumably also have access to the audio recording of the Interview, there is no evidence that any lawyer is responsible for the Broadcast. Accordingly, the most likely explanation is that one of the defendants held at the MDC is responsible for the Broadcast of the Interview.

While inmates at the MDC are not permitted to possess cell phones, four defendants in this case nonetheless managed to obtain contraband cell phones while being detained at the MDC: Bruce Silva, Bruce Melvin, Shadell McBride, and Gabriel Valdez. (Govt. June 21, 2024 Ltr. (Dkt. No. 162) at 1) Silva, McBride, and Valdez were found in possession of a cell phone on the following dates: Silva on February 3, 2024 and April 23, 2024; McBride on October 25, 2022 and June 13, 2023; and Valdez on June 3, 2024. (Id.)

8

As discussed above, a contraband cell phone was found in Melvin's cell at the MDC on February 27, 2024, about a month after the Interview was posted on Instagram. (Govt. Br. (Dkt. No. 86) at 2 n.2) Given that the seized phone has a photo of Melvin on the lockscreen (id.) and contains messages between Melvin and his attorney (Apr. 24, 2024 Tr. (Dkt. No. 144) at 3), there is no doubt that the phone recovered in Melvin's cell is Melvin's phone. There is likewise no dispute that the cell phone recovered from Melvin's cell was capable of recording the Interview and broadcasting it over Instagram.

While four defendants in this case had access to the Interview and possessed contraband cell phones while in the MDC – Silva, Melvin, McBride, and Valdez – no one has suggested that the voices of Silva, McBride, or Valdez are heard commenting on the Interview during the Broadcast. Moreover, Det. Boyer testified that he is "familiar with the voices" of Melvin's nine co-defendants and that he does not believe "that the voice of the commentator in these videos could be one of the other defendants." (Id. at 26-27)

As to Melvin, however, Det. Boyer testified that he is "fairly certain" that his voice is heard commenting on the Interview. (Id. at 14-16, 25-26) Det. Boyer's identification is premised on his significant exposure to Melvin's "distinctive" voice over the three-year investigation of Dub City. Boyer has spoken to Melvin in person on two occasions, and has listened to hundreds of audio recordings of Melvin's voice and to "more than 50" of Melvin's recorded jail calls over the past three years.

As to the three YouTube videos (Govt. Br., Exs. A, B, and C (Dkt. No. 86)) and the known exemplars of Melvin's voice provided by the Government (Govt. Br., Exs. D, E, and F (Dkt. No. 86)), the Court agrees that Melvin's voice is somewhat distinctive, and that the exemplars of Melvin's voice sound similar to the voice of the person commenting on the

9

Interview in the Instagram broadcast. Both voices are of the same pitch – neither high-pitched nor low-pitched – and the voices share a recognizable drawl. Most notably, there is a slight lisp in Melvin's pronunciation of the word "listen" in one of the exemplars. (See Govt. Br., Ex. D (Dkt. No. 86) ("alright listen bro, I'm gonna show you how easy it is")) Across the three YouTube videos, the person commenting on the Interview uses the word "listen" more than two dozen times, and in almost every instance the same lisp is apparent. (Govt. Br., Ex. A (Dkt. No. 86), at 1:20, 1:49, 3:00, 7:04, 9:57, 14:04, 15:19, 16:42, 19:15, 22:48, 23:58; Ex. B, at 3:08)

Given that (1) only the ten defendants and their lawyers had access to the Interview; (2) all of the ten defendants were held at the MDC, where cell phones are not permitted; (3) only Silva, Melvin, McBride, and Valdez have been found to be in possession of contraband cell phones; (4) no party has asserted that the voice of Silva, McBride, or Valdez is heard on the Broadcast; (5) Det. Boyer – who has become familiar with Melvin's "distinctive" voice over the course of his three-year investigation of Melvin and the Dub City gang – believes that Melvin's voice is heard commenting on the Interview; and (6) the similarities between the known exemplars of Melvin's voice and the voice of the person commenting on the Interview, this Court finds by a preponderance of the evidence that it was Melvin who uploaded the Interview onto Instagram from within the MDC, and that he did so in violation of the protective order.

## **CONCLUSION**

For the reasons stated above, the Government's motion for discovery sanctions against Melvin is granted. Melvin may only access the discovery materials in this case while in the presence of counsel.

The Clerk of Court is directed to terminate the motion (Dkt. No. 86).

Dated: New York, New York
June 24, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

11